578 A.2d 600

**SAMUEL J. LANSBERRY, INC., Petitioner**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 30, 1990.

Decided July 25, 1990.

Reargument Denied September 12, 1990.

Herbert R. Nurick, McNees, Wallace & Nurick, Harrisburg, for petitioner.

Dennis J. Buckley, Asst. Counsel, with him, H. Kirk House, Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, for respondent.

Dwight L. Koerber, Jr., Kriner, Koerber and Kirk, Clearfield, for intervenors, Kephart Trucking Co. and Butler Trucking Co.

Christian V. Graf, New York City, with him, David H. Radcliff, Graf, Andrews & Radcliff, P.C., Harrisburg, for intervenors, Jonas P. Donmoyer, Inc., Cressona Trucking Co., J. Marlin Ernst & Sons, Inc., Leffler Transp. Co., and Schwerman Trucking Co.

John A. Pillar, Pillar and Mulroy, P.C., Pittsburgh, for intervenors, Wayne W. Sell Corp. and David Tesone Trucking, Inc.

Before DOYLE and SMITH, JJ., and BARBIERI, Senior Judge.

SMITH, Judge.

Before the Court is the petition for review of Samuel J. Lansberry, Inc. (Lansberry) from the final order of the

Pennsylvania Public Utility Commission (PUC) granting Lansberry authority to transport property in bulk between points in Pennsylvania for forty-four named shippers. Lansberry contends that its authority should not have been restricted to only those shippers named but should have been extended to all shippers in the Commonwealth, except as restricted by Lansberry's amended application before the PUC. The PUC's order is affirmed.

Lansberry filed an application with the PUC requesting authority to transport property in bulk between points in Pennsylvania generally. Lansberry had existing PUC authority to transport bulk commodities, coal, lime, limestone, and like materials in dump trucks from a base in Clearfield County to points in Western, Central, and Eastern Pennsylvania. Lansberry's application, if approved, would have removed all intrastate territorial, destination, trip, commodity, and equipment restrictions.

Lansberry's application was opposed by fifty-five carriers, prompting Lansberry to amend its application to restrict its request to transport petroleum and petroleum products only to certain named shippers and territories. Twelve protestants remained opposed to the application after amendment, and a hearing was held before the Administrative Law Judge (ALJ) over a span of twenty-three days. The ALJ found that while the evidence supported statewide territorial, full commodity, and full equipment authority for Lansberry, the evidence did not demonstrate that Lansberry was supported by a cross section of shippers. For that reason, the ALJ restricted Lansberry's broad authority to only those forty-four shippers supporting Lansberry's application. The PUC affirmed the ALJ, and Lansberry filed the instant petition for review.

Lansberry raises the following issues for consideration: (1) Did the PUC err by requiring Lansberry to prove its case by a preponderance of the evidence instead of by substantial evidence? (2) Assuming that the PUC applied the correct evidentiary standard, did the PUC err by applying a different burden of proof concerning shipper represen-

tation than the burden of proof it has required in all previous cases? (3) Did the PUC violate Lansberry's due process and equal protection rights by applying this new burden of proof? This Court's standard of review of orders entered by the PUC is limited to determinations of whether the PUC committed an error of law, whether substantial evidence supports the PUC's findings, and whether constitutional rights were violated. *Pittsburgh–Johnstown–Altoona Express, Inc. v. Pennsylvania Public Utility Commission*, 123 Pa. Commonwealth Ct. 237, 554 A.2d 137 (1989) (*PJAX*).

Lansberry first argues that the PUC erred by requiring Lansberry to prove its case by a preponderance of the evidence rather than by substantial evidence. Substantial evidence is "the relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached." *Gallo v. Workmen's Compensation Appeal Board (United Parcel Service)*, 95 Pa. Commonwealth Ct. 158, 163, n. 1, 504 A.2d 985, 988, n. 1 (1986). Arguably, substantial evidence may be somewhat less than a preponderance of the evidence, *Forte v. Matthews*, 427 F.Supp. 187 (E.D.Pa.1977), but it is also, as clearly demonstrated by the above definition, an appellate standard of review and not a standard of evidence applied by a fact finder to determinations of whether a burden of proof has been satisfied. The extensive relevant body of case law in this Commonwealth unalterably supports this rather fundamental precept. *See, e.g., PJAX,* enunciating this Court's standard of appellate review of PUC orders.

It is clear, on the other hand, that the degree of proof required to establish a case before an administrative tribunal is the same degree of proof used in most civil proceedings, i.e., a preponderance of the evidence. *North American Coal Corp. v. Air Pollution Commission*, 2 Pa. Commonwealth Ct. 469, 279 A.2d 356 (1971). *See also Application of Over–Land Coach Lines, Inc.*, 47 Pa. P.U.C. 665 (1974), and *Re Lincoln Transport, Inc.*, 49 Pa. P.U.C. 451

(1975). It is well established in this Commonwealth that proof by a preponderance of the evidence is the lowest degree of proof recognized in civil judicial proceedings. *Se–Ling Hosiery, Inc. v. Margulies*, 364 Pa. 45, 70 A.2d 854 (1950).[1]

■ The cases cited by Lansberry in support of its argument do not lend doubt to this basic premise. In both *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.*, 345 Pa. 398, 29 A.2d 90 (1942) and *Lancaster Transportation Co. v. Pennsylvania Public Utility Commission*, 181 Pa. Superior Ct. 129, 124 A.2d 380 (1956), substantial evidence was clearly applied as an appellate standard of review and not as a quantum of proof necessary to persuade a fact finder. When the Court in *Kaufmann*, after a lengthy analysis of substantial evidence as an appellate standard of review, stated that "the burden was upon [the relevant parties] to prove by substantial and legally credible evidence ... the real motive ...," *Id.* at 405, 29 A.2d at 94,[2] it was not attempting to state that substantial evidence is a standard to be applied at the fact finding level as well as the appellate level. Rather, the language of the passage must be taken literally—a litigant must satisfy its burden of proof with evidence that is substantial and legally credible, not with mere "suspicion" or by only a "scintilla" of evidence. *Id.* at 400, 29 A.2d at 92.[3] The litigant's burden of proof before administrative tribunals as well as before most civil proceedings is satisfied by establishing a preponderance of evidence which is

1. Lansberry, as an applicant seeking motor carrier authority, has the burden of demonstrating to the PUC that the grant of authority will serve a useful public purpose, responsive to a public demand or need, and that the applicant possesses the technical and financial ability to provide the proposed service. 52 Pa.Code § 41.14. To meet this burden of proof, the applicant must prove its case by a preponderance of the evidence in accordance with *Se–Ling Hosiery* and *North American Coal.*

2. Lansberry hinges its argument primarily on this passage of *Kaufmann* and a like passage in *Lancaster.*

3. This analysis can be applied equally to the passage Lansberry has selected from *Lancaster* and set forth in its brief in support of its argument.

substantial and legally credible. Thus, Lansberry's argument is without merit.

Lansberry next argues that the PUC committed an error of law by requiring Lansberry to prove elements for its case that the PUC had allegedly never required of any previous applicant. Specifically, Lansberry argues that the PUC required Lansberry to prove that those shippers who supported Lansberry's application were representative of all shippers by comparing the supporting shippers with the field of potential shippers. Lansberry contends that the PUC would require Lansberry to "count noses" in an effort to show that the supporting shippers constituted an appropriate percentage of all potential shippers. Because the PUC found that Lansberry failed to demonstrate that its supporting shippers were representative of the field, it restricted Lansberry's grant of authority only to the forty-four supporting shippers.

Lansberry's arguments are completely without merit. The PUC simply and correctly required Lansberry to demonstrate that it had representative support from the Commonwealth's shippers to sustain Lansberry's broad application for nearly full intrastate authority. This requirement is not new, as the extensive body of PUC case law cited by both parties bears out. Further, the manner in which the PUC suggested Lansberry could meet this requirement, which Lansberry contends is impossible and a burden never before imposed, is not only reasonable under the circumstances of the application but also not intended by the PUC to be exhaustive. The relevant text of the PUC's holding clearly bears this out:

> Our review of the record as developed in this proceeding, leads us to conclude that CALJ Turner's rationale is amply supported by the evidence when she concluded that:

> I cannot find on this record that applicant has demonstrated sufficiently that he is supported by a cross-section of shippers. Points of origin and destination (including potential for additions and deletions) can be

gauged statewide. The commodities on the record can be compared to those found in protestants' authority. Equipment used in bulk transportation is known. But it is not clear on this record how to define a representative class of shippers, or that a true cross section has been shown. There should be, at a minimum, a mix of high-volume and lower-volume shippers, and of local, regional, and statewide businesses, and some idea of the varying categories or numbers of businesses that make up the bulk shipping market. This is part of the applicant's burden, and Lansberry has not persuasively met it. For this reason I conclude that the application should be limited to certain named shippers or their successors.... I[nitial] D[ecision] pp. 127–128

We note that the testimony presented by the Protestants herein, indicates that they serve a substantial number of shippers in Pennsylvania who do not support the instant application.... In fact, the named shippers supporting the subject Application constitute only a small portion of the overall market that is available for the Applicant to serve.... [S]ince the Protestants herein, have produced substantial evidence indicative of the fact that they (Protestants) are providing a substantial volume of bulk traffic, it is evident that the supporting shippers are not representative of a cross-section of the entire bulk transportation field in the Commonwealth of Pennsylvania. We are, therefore, not persuaded that the Applicant has satisfied the requisite burden of proof.

Final Order, pp. 22–23.

It must further be noted that Lansberry's application was not of the ordinary variety; rather, it was for full statewide rights to ship bulk commodity and equipment, the first such application made in this Commonwealth to the ALJ's knowledge. ALJ Initial Decision, p. 101. In matters before an agency, "the sufficiency of the evidence to support a grant of authority is directly related to the nature and extent of the authority granted." *Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission*, 185 Pa. Superior Ct. 115, 123, 138 A.2d 279, 283 (1958). Therefore, it

cannot be said that the PUC erred by requiring Lansberry to produce evidence that its supporting shippers, though perhaps representative of commodities and equipment, are also representative of the breadth of shippers in this Commonwealth, when Lansberry is seeking authority to transport for all Commonwealth shippers (except as restricted in its amended application). Further, Lansberry has not set forth any argument to this Court that the evidence demonstrates its application is supported by a cross section of shippers or why such a demonstration would have been impossible to make.

Concerning Lansberry's argument that the PUC has never before imposed a burden on an applicant to demonstrate that its supporting shippers are representative by showing a "mix" of potential shippers and a percentage of supporting shippers to all shippers, it is noted that Lansberry's application is unique in its scope. What is clear from the PUC's discussion and the briefs,[4] however, is that Lansberry failed to demonstrate in any manner that its supporting shippers are representative of all potential shippers so as to justify a full grant of authority. Thus, Lansberry's case is very different from those cases cited in support of its argument wherein cross sections of supporting shippers were found by the PUC. Accordingly, this Court rejects Lansberry's argument that it was confronted with a new burden of proof by the PUC and its companion argument, that it was denied due process and equal protection rights when confronted with an alleged "new" burden of proof.

For the above reasons, the PUC's order is affirmed.

## ORDER

AND NOW, this 25th day of July 1990, the Final Order of the Pennsylvania Public Utility Commission entered October 3, 1989 is affirmed.

---

**4.** The parties agreed not to provide this Court with a certified record, as authorized by Pa.R.A.P. 1952(b), because of its great bulk, relying instead on the Initial Decision of the ALJ and the final order of the PUC.