Russell SUBER, Petitioner

v.

**PENNSYLVANIA COMMISSION ON CRIME AND DELINQUENCY, Deputy Sheriff's Education and Training Board, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 7, 2005.

Decided Oct. 28, 2005.

Samuel C. Stretton, West Chester, for petitioner.

Suzanne N. Hueston, Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Russell Suber (Suber) appeals from an order of the Pennsylvania Commission on Crime and Delinquency's Deputy Sheriffs' Education and Training Board (Board) removing him from the Board's Deputy Sheriffs' Education and Training Program (Program) for cheating on a Civil Procedure examination.[1]

---

1. The Board operates under the Pennsylvania Commission on Crime and Delinquency (Commission). Section 3 of the Deputy Sheriffs' Education and Training Act (Act), Act of February 9, 1984, P.L. 3, No. 2, *as amended,* 71 P.S. § 2103. The Board is responsible for establishing, implementing and administering the Program according to the requirements of the Act. Section 4(a) of the Act, 71 P.S. § 2104(a). Section 7(a) of the Act, 71 P.S. § 2107(a), requires deputy sheriffs with less than five years experience to complete the Program, and pursuant to Section 7(c) of the Act, 71 P.S. § 2107(c), these deputy sheriffs have a two-year window to complete the Program. The Board issues a certification to a

Suber was a Deputy Sheriff in the Philadelphia County Sheriff's Office, and to become certified, he was enrolled in the Program at Penn State's Justice and Safety Institute (Academy), which provided courses for the Program under contract with the Commission. On January 4, 2002, Suber took a Criminal Procedure examination.

Suber had been seen by witnesses moving his answer sheet in different directions, lifting his answer sheet off the tabletop, and looking at the tabletop that had been under the answer sheet. While Suber was taking a Civil Procedure examination on January 17, 2002, he was seen by witnesses being given answers to questions on the tests by another student as well as giving answers to a fellow student to a question on the test. Because the Academy concluded that Suber cheated on both the Criminal and Civil Procedure examinations, he was dismissed from the Program. Suber requested a hearing to challenge his dismissal, and Kenneth Brody, Esquire, was appointed as the Hearing Officer (Hearing Officer).

At the hearing, regarding Suber's alleged cheating at the January 4, 2002 Criminal Procedure Examination, five deputy sheriffs, who were fellow students, testified that they saw writing on that tabletop space in front of Suber during that morning of January 4, 2002. Four of them testified that the writing appeared to be definitions or an answer to a question that they were told would be on the afternoon test. However, two Program administrators, Robert Stonis, the Associate Director of the Academy, and Joseph DeStefano, a training specialist, inspected the classroom after the class left for the lunch break and saw nothing more than a smudge mark on the tabletop where Suber sat.

As to Suber's alleged cheating on the January 17, 2002 Civil Procedure examination, Deputy Sheriff Shearer testified that after he completed the examination and was returning his pencil to his book bag, he heard another Deputy Sheriff ask Suber for the answer to question 26 or 36 while they were still taking the examination. He did not hear Suber reply. Deputy Sheriff Reiner (Reiner) testified that when he went to the front of the room to ask the instructor about the test, he heard another Deputy tell Suber that the answer to a question was "c." Reiner also testified that he heard a second Deputy ask Suber for the answer to a question, and that Suber responded that the answer was "c." Deputy Sheriff Weary testified that while she was taking the Civil Procedure examination, she heard two deputies whispering, "What's the answer to this question?" and "What about this one?," and she heard Suber state that the answer to question 39 was "d," but that she could have been mistaken regarding the answer that Suber gave.

Suber testified that he had worked as a Deputy Sheriff in Philadelphia County for two years; before that he had worked seven years as a Philadelphia Corrections Officer. He denied doing anything inappropriate during the January 4, 2002 Criminal Procedure examination and denied erasing or writing anything on his desk, but indicated there was an eraser smudge mark where someone wrote an obscenity on his desk. He also denied cheating on the January 17, 2002 Civil Procedure examination. He testified there were several clarifications by the instructor during the examination because some

deputy sheriff who successfully completes the Program, and this certification makes a deputy sheriff eligible to receive "any salary, compensation or other consideration or thing of value for the performance of his duties as a deputy sheriff . . ." 71 P.S. § 2107(c).

of the questions were poorly worded, including question number 39 where the answer was given as "*d.*" Suber testified he had performed very well in the Sheriff's training course and in several weeks had received "A's" and "B's" on all his examinations.

Trina Doram, Joseph Wilkins, and Barry Johnson, all fellow students, testified that during the January 17, 2002 Civil Procedure examination, they did not observe Suber or anyone else acting inappropriately. A few of them testified that the instructors clarified some of the questions and gave out answers to several questions, implying those answers were what the other students could have heard.

■ Rejecting Suber's contention that the proper standard of proof to be applied to a case of this nature was the "clear and convincing" burden, the Hearing Officer held that the preponderance of the evidence standard of proof was applicable to an administrative proceeding. Applying this standard, he determined the evidence did not establish Suber had cheated on the Criminal Procedure examination. With regard to the Civil Procedure examination, the Hearing Officer found Suber had cheated and should be dismissed based on his finding that those classmates who testified regarding their observations of cheating were credible. The Board adopted the Hearing Officer's report affirming Suber's dismissal from the Program, and this appeal followed.[2]

■ Suber contends that the Board erred in utilizing the preponderance of the evidence standard as the burden of proof in this case when instead the burden should have been a preponderance of the

evidence that is clear and convincing or satisfactory. The standard or burden of proof in a particular type of proceeding is based upon the level of concern regarding the degree of accuracy in the factual findings made by the trier of fact. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The traditional "preponderance of the evidence" standard allows parties—usually engaged in a civil dispute best settled by monetary compensation—to share equally the risk in proving their claims and affirmative defenses. Any other standard expresses a preference for one side's interests. Cases in which one party has accused another of a civil wrong with more severe implications, such as fraud, require proof by clear and convincing evidence. Finally, in a criminal case, almost the entire risk of error is placed upon the state which is required to prove the guilt of the accused beyond a reasonable doubt.

■ In civil actions, the preponderance of the evidence standard generally is used except in certain situations that require clear and convincing evidence, which is reserved for cases "where particularly important individual interests or rights are at stake," *Herman & MacLean v. Huddleston,* 459 U.S. 375, 389, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); such as in hearings to terminate parental rights, *In re: B.N.M.,* 856 A.2d 847 (Pa.Super.2004); involuntary commitment proceedings, *In re: S.B.,* 777 A.2d 454 (Pa.Super.2000); civil fraud, *Donahue v. Workers' Compensation Appeals Board (Philadelphia Gas Works),* 856 A.2d 230 (Pa.Cmwlth.2004); *Pare v. Wyeth, Inc.,* 870 A.2d 378 (Pa.Super.2005); public figure defamation, *Weaver v. Lancaster*

---

2. Our scope of review of the Board's determination is that this Court shall uphold an adjudication unless it violates constitutional rights, is not in accordance with law or a necessary finding is not supported by substantial evidence. 2 Pa.C.S. § 704; *see also Coon v. Deputy Sheriff's Education and Training Board,* 111 Pa.Cmwlth. 176, 533 A.2d 804 (1987).

*Newspapers Inc.,* 875 A.2d 1093 (Pa.Super.2005); and reinstatement of a license to practice law, *In re Greenberg,* 561 Pa. 154, 749 A.2d 434 (2000). Not only is that standard used for those that have the burden, but it is also used to establish certain affirmative defenses. *Webb v. Commonwealth, Department of Transportation, Bureau of Motor Vehicles,* 870 A.2d 968 (Pa.Cmwlth.2005). Imposition of even severe civil sanctions that do not implicate such individual constitutional interests has been permitted after proof by a preponderance of the evidence. *Herman & MacLean,* 459 U.S. at 389, 103 S.Ct. 683; *see also U.S. v. Regan,* 232 U.S. 37, 48–49, 34 S.Ct. 213, 58 L.Ed. 494 (1914) (proof by a preponderance of the evidence suffices in civil suits involving proof of acts that expose a party to a criminal prosecution). However, some states have held that the imposition of an administrative fine is penal in nature and requires the application of the clear and convincing evidence standard. *See Department of Banking and Finance v. Osborne Stern,* 670 So.2d 932 (Fla.1996).

■ "Clear and convincing evidence" is the highest burden in our civil law and requires that the fact-finder be able to "come to clear conviction, without hesitancy, of the truth of the precise fact in issue." *Lessner v. Rubinson,* 527 Pa. 393, 400, 592 A.2d 678, 681 (1991). To meet that standard, it necessarily means that the witnesses must be found to be credible, that the facts to which they have testified are remembered distinctly, and that their testimony is so clear, direct, weighty, and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. *Jones v. Prudential Property and Casualty Insurance Co.,* 856 A.2d 838 (Pa.Super.2004).

■ Like civil actions, the normal burden of proof for most administrative actions is the preponderance of the evidence standard. *Samuel J. Lansberry, Inc. v. Pennsylvania Public Utility Commission,* 134 Pa.Cmwlth. 218, 578 A.2d 600 (1990), *petition for allowance of appeal denied,* 529 Pa. 654, 602 A.2d 863 (1998); *see also North American Coal Corp. v. Air Pollution Commission,* 2 Pa.Cmwlth. 469, 279 A.2d 356 (1971). Citing to *In Matter of Leopold,* 469 Pa. 384, 366 A.2d 227 (1976), Suber contends, however, that the clear and convincing evidence standard should apply because deputies removed from the Program would lose their jobs because they could not be certified which in turn would deprive them of significant property and liberty interests. *Leopold* involved the standard of proof our Supreme Court would apply when conducting a *de novo* review of the recommended disbarment of an attorney. In rejecting the contention that the "beyond a reasonable doubt standard" should be used, our Supreme Court, not using the words "clear and convincing," stated that "[w]hile we recognize the severe impact that such sanctions may have on an individual's career, we are also mindful of our duty to uphold the quality and integrity of the Bar." Accordingly, we shall not require proof beyond a reasonable doubt, but shall retain the standard which this Court has consistently utilized in disciplinary cases through the years: "[T]hat a preponderance of evidence is necessary to establish an attorney's unprofessional conduct and the proof of such conduct must be clear and satisfactory." *Id.* at 394, n. 11, 366 A.2d at 232, n. 11 (quoting *In re Berlant,* 458 Pa. 439, 441, 328 A.2d 471, 473 (1974)). Initially, we note that disbarments are outside of the normal administrative process, they do not involve the Administrative Agency Law in any way, and the Supreme Court is free to determine the standard. Moreover, even

assuming that the interest here is equivalent to disbarment[3] and that "preponderance of that evidence that is clear and satisfactory" is equivalent to "clear and convincing," the application of the "clear and convincing" standard should apply because in disbarment cases, our Supreme Court decides the case as fact-finder from which there is no appeal. *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186 (1994). Because of the unusual nature of disbarment proceedings, we refuse to apply that standard to appeals taken, as here, under the Administrative Agency Law.[4]

More apropos is our recent decision in *Ruane v. Shippensburg University,* 871 A.2d 859 (Pa.Cmwlth.2005), where a student was suspended for sexual assault. In that case, we held that the proper standard was not the clear and convincing standard of proof, but the "by a preponderance of the evidence" standard. In *Boguslawski v. Department of Education,* 837 A.2d 614 (Pa.Cmwlth.2003), where a teacher's teaching certificate was revoked under the Professional Educator Discipline Act,[5] we specifically re-affirmed *Lansberry* concluding that preponderance of the evidence was the correct standard to be applied in teacher discipline cases. Because the interests here are no more substantial than the interest expressed in either *Ruane* or *Boguslawski* or in other employee discipline cases, the Board correctly applied the preponderance of the evidence standard of proof to this proceeding.

 Even if the preponderance of the evidence was the proper standard, Suber contends that the Board's decision that he cheated on the January 17, 2002 Civil Procedure exam is not supported by substantial evidence because it ignored that he denied giving or receiving answers during the examination which was confirmed by at least three disinterested witnesses; that his answer sheet as well as the answer sheets of the other students he supposedly gave the answer to revealed that no letter "*c*" had been checked off on any of their papers; and that the evidence showed that he had no motive to cheat because the Civil Procedure examination could be retaken until he passed, and he was an excellent and well-prepared student and received high marks on previous examinations. What this argument ignores is that the Board did not ignore this evidence.

 By adopting the well-reasoned and thorough opinion of the Hearing Officer, the Board determined that Suber's testimony that he did not cheat was not credible because it directly conflicted with the testimony of three of his classmates who testified that he did cheat. The Board

---

**3.** Interestingly, although deputy sheriffs with less than five years experience are required to complete the Program to become certified, their expulsion from the Program does not make them ineligible to serve as deputy sheriffs; it simply does not allow them to be eligible to receive "any salary, compensation or other consideration or thing of value for the performance of his duties as a deputy sheriff." 71 P.S. § 2107(c).

**4.** The only other instance we found where an administrative agency uses a "clear and convincing" standard is under the Public Official and Employee Ethics Act, 65 Pa.C.S. §§ 1101–1112, which requires that the Ethics Commission must find "a violation by clear and convincing proof." 65 Pa.C.S. § 1108. In *Pulice v. State Ethics Commission,* 713 A.2d 161, 169 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 557 Pa. 642, 732 A.2d 1211 (1998), we noted that this is a more stringent standard under which the Commission may find a violation of the Act and it seems to be in conflict with the standard of review recited in the Administrative Agency Law.

**5.** Act of December 12, 1973, P.L. 397, *as amended,* 24 P.S. §§ 2070.1a–2070.18a.

found that the three classmates were more credible and reliable in part because they each filed a written report of their observations close in time to the test date. Not only did the Board review all that evidence, but Suber's contention ignores that the Board, as the ultimate fact-finder, may accept or reject the testimony of any witness in whole or in part, and that we are bound by its credibility determinations and cannot change them on appeal even if we were inclined to do so. *Boyce v. State Horse Racing Commission,* 651 A.2d 656 (Pa.Cmwlth.1994); *see also Barran v. State Board of Medicine,* 670 A.2d 765 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 544 Pa. 685, 679 A.2d 230 (1996).

Accordingly, because the proper standard of proof was applied and there was substantial evidence to support it decision, the Board's order is affirmed.

### ORDER

AND NOW, this *28th* day of *October,* 2005, the order of the Pennsylvania Commission on Crime and Delinquency's Deputy Sheriffs' Education and Training Board dated January 18, 2005, is hereby affirmed.