Rochester Area School District    :
    :
    v.    :
    :
Derek R. Weidner    : No. 1412 C.D. 2018
    : ARGUED:  May 7, 2019
    v.    :
    :
Kapaco Investment Group, LLC    :
    :
Appeal of: Derek R. Weidner    :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge
    HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER    FILED:  July 11, 2019

In this appeal, Appellant Derek R. Weidner (Weidner) challenges the Court of Common Pleas of Beaver County's (Trial Court) September 19, 2018, order denying his Petition for Redemption pertaining to a property located at 140 Lacock Avenue in East Rochester, Pennsylvania (Property), which had been Weidner's home before it was sold at an April 9, 2018, tax sale to Appellee Kapaco Investment Group, LLC (Kapaco). Through this order, the Trial Court deemed the Property "vacant" pursuant to Section 32(c) of what is commonly known as the Municipal Claims and Tax Liens Act (Act)[1] and, therefore, that redemption was no longer

---

[1] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. § 7293(c).

possible because the sheriff's deed for the Property had already been acknowledged. We affirm.

The factual history in the matter is essentially agreed-upon by both Kapaco and Weidner.[2] *See* Kapaco's Br. at 2. On January 14, 2015, Appellee Rochester Area School District (School District) filed a claim against Weidner pursuant to the Act, due to his failure to pay the school taxes assessed against the Property. Weidner did not respond, resulting in the entry of a default judgment against him on June 17, 2015. The School District subsequently docketed a Praecipe for Writ of Execution on April 20, 2016, paving the way for the Property to be sold at sheriff's sale. This did not happen immediately, however, as the sale was repeatedly continued over the course of the next two years.

Weidner was living at the Property throughout this period of time, until November 17, 2017, when he began serving a short jail sentence due to being convicted for driving under the influence. Weidner Dep. at 10, 14, 26. Weidner was eventually released from jail on January 19, 2018. Rather than returning to his Property in East Rochester, he moved into his girlfriend's house in Beaver Falls, Pennsylvania. *Id.* at 11-12, 14, 24-25. Weidner claimed that he did so because "[t]he water got shut off [at the Property]. . . . That's why I went [to live in Beaver Falls] or I'd have been back home." *Id.* at 14. However, the record reflects that the Beaver Falls Municipal Authority did not shut off the Property's water service until February 23, 2018, due to an unpaid balance of $308.26. Reproduced Record (R.R.) at 123-24. According to Weidner, he did not have enough money at that point in time to pay both his property taxes and his water bill, so he elected to satisfy what he

---

[2] Rochester Area School District filed a Notice of Non-Participation with our Court on February 11, 2019.

owed on the former and assumed he would be able to deal with the latter at some point in the future. *Id.* at 14-15, 18-19.

On April 8, 2018, the Property was sold to Kapaco at sheriff's sale. The sheriff's deed for the Property was acknowledged on April 30, 2018. Kapaco recorded this deed on May 1, 2018. *Id.* at 12-14. On May 15, 2018, Weidner filed his Petition for Redemption, arguing that he was allowed to redeem the Property under the Act.[3] Petition for Redemption ¶¶1-12. Kapaco intervened in the matter and responded in opposition to the Petition for Redemption. Kapaco maintained that at the time of the sale, the Property had been "vacant," as that word has been defined through case law interpreting the Act, and could not be redeemed because the deed had already been acknowledged. Kapaco's Br. in Opposition to Petition for Redemption at 2-10.[4]

The Trial Court held a rule hearing on September 17, 2018 on the Petition for Redemption. Kapaco and Weidner offered evidence regarding Weidner's usage of the Property during the time period surrounding the sheriff's sale, the physical state of the Property itself, the Property-related debts owed and payments (or lack thereof) made by Weidner, and the status of the various utility services being supplied to the Property. Notes of Testimony (N.T.), 9/17/18, at 5-14. After allowing both parties

---

[3] The Act allows, in relevant part, the owner of "any property sold under a tax or municipal claim" to reestablish ownership upon filing of a petition within nine months of the deed's acknowledgement, in addition to payment of the municipal or tax debt owed plus, costs, fees, and interest, as long as the property "was continuously occupied by the same individual or basic family unit as a residence for at least ninety days prior to the date of the sale and continues to be so occupied on the date of the acknowledgment of the sheriff's deed therefor." Section 32(a) and (c) of the Act, 53 P.S. § 7293(a), (c).

[4] Kapaco also raised an alternative argument, regarding Weidner's need to reimburse Kapaco for costs related to the sheriff's sale in the event that his Petition for Redemption was granted, which is not relevant to this appeal. Br. in Opposition to Petition for Redemption at 10-12.

to present oral argument, the Trial Court discussed *Brentwood Borough School District v. HSBC Bank USA*, 111 A.3d 807 (Pa. Cmwlth. 2015), *aff'd*, *Brentwood Borough School District v. Held*, 139 A.3d 187 (Pa. 2016) (*per curiam*), which addressed the question of how to determine whether a property should be deemed "vacant" under the Act. N.T., 9/17/18, at 24-26. The Trial Court summarized the test articulated in *Brentwood* as follows:

> [The question of] whether a property was continuously occupied by the same individual basic family unit as a residence is a factual determination which must be made on a case[-]by[-]case basis considering factors . . . [including] whether anyone was habitually physically present at the property, *i.e.*[,] regularly sleeping and eating there, and using it as a place to dwell, whether any lack of physical presence was due to temporary illness, travel or renovation, whether the property was unsecured, damage[d], or un[in]habitable, and whether the basic and necessary utilities, such as water, electric, and gas were operational.

*Id.* at 25-26.[5] Turning to the particulars of this matter, the Trial Court stated

> [I] have to weigh a balance of things. You[, *i.e.*, Weidner's attorney] show me photographs that show that [Weidner] maintained everything still at the [Property], even pets . . . and you provide me with evidence that show[s] that he did pay county taxes prior to the sheriff sale. I have to weigh

---

[5] The Trial Court's wording was virtually identical to that which we used in *Brentwood*:

> Whether a property was "continuously occupied by the same individual or basic family unit as a residence" is a factual determination which must be made on a case-by-case basis, considering factors, such as: whether anyone was habitually physically present at the property, i.e., regularly sleeping and eating there and using it as a place to dwell; whether any lack of physical presence was due to temporary illness, travel or renovation; whether the property was unsecured, damaged or uninhabitable; and whether the basic and necessary utilities such as water, electric and gas were operational.

*Brentwood*, 111 A.3d at 813.

and balance those against the fact that there was no water [service to] the premises [between February 23, 2018, and the date] the property was sold, that [Weidner] had not lived there since November with a sale that occurred in April [2018.]

. . .

[Weidner] was obviously delinquent in, in the water bill, but that is why he did not go back to the house in January, and the water was [then] shut off [on February 23, 2018]. You indicate that [Weidner] . . . still had electric service there, but he owed $3,252.97 on that. I don't know what the status of that is now.

*Id.* at 27, 29.

The parties then offered additional argument regarding the Property's habitability and whether it should be deemed vacant per *Brentwood*. *Id.* at 31-40. The Trial Court concluded that the Property was vacant pursuant to the Act for several reasons: first, Weidner never made any attempt to pay the Property's school taxes prior to the sheriff's sale; second, he did not live at the Property after November 17, 2018, and made no attempt to reestablish it as his domicile after being released from jail; third, water service at the Property was terminated nearly two months prior to the sheriff's sale; and fourth, there were other utility bills for the Property that were in arrears. *Id.* at 42-49. Consequently, the Trial Court denied the Petition for Redemption, as Weidner no longer had the statutory right to redeem the Property. Tr. Ct. Or., 9/19/18, at 1.

This appeal followed on October 16, 2018. The Trial Court ordered Weidner to submit a Concise Statement of Errors Complained of on Appeal, which Weidner did in a timely fashion. However, rather than issue a formal Opinion, the Trial Court instead opined in a brief order that Weidner had waived his ability to appeal by virtue of failing to file a post-trial motion. Tr. Ct. Or., 11/26/18, at 1. In the alternative, the Trial Court maintained that all of the issues Weidner had raised in his Concise

Statement of Errors Complained of on Appeal had been adequately addressed through the factual findings and legal conclusions made on the record during the September 17, 2018, hearing, which had been incorporated by reference into the Trial Court's September 19, 2018, order. *Id.* at 1-2.

On appeal, Weidner argues that he did not waive his right to appeal, as he was not required to file a post-trial motion in the Trial Court, since such motions are not allowed in "matters governed exclusively by the rules of petition practice." Weidner's Br. at 11 (quoting Note to Pa. R.C.P. No. 227.1(c)). In the alternative, Weidner opines that the September 17, 2018, hearing did not constitute a trial and, therefore, it was unnecessary for him to file a post-trial motion. *Id.* at 13-14.

In addition, on the merits of the Trial Court's decision, Weidner maintains that the Trial Court improperly failed to consider Weidner's **intent** to return to the Property. Weidner points out that he had paid the property taxes that were owed after his release from jail, kept both electric and gas service active, was on a payment plan for his delinquent electric bill, needed only to pay a relatively small amount of money to have water service restored, maintained the Property and kept it fully furnished, had not been cited for any code violations, and had never changed his mailing address to another location. *Id.* at 18. On this basis, Weidner argues that the Trial Court erred by deeming the Property vacant and denying his Petition for Redemption on that basis. *Id.* at 4, 18-19.

Preliminarily, we agree that Weidner was not required to file a post-trial motion in this matter. In Pennsylvania, tax claims like the one which eventually gave rise to this appeal are initiated by a writ of scire facias.

> A writ of scire facias is a mandate to the sheriff, which recites the occasion upon which it issues, which directs the sheriff to make known to the parties named in the writ that they must appear before the court on a given day, and

6

which requires the defendant to appear and show cause why the plaintiff should not be permitted to take some step, usually to have advantage of a public record. The object of the writ of scire facias is ordinarily to ascertain the sum due on a lien of record and to give the defendant an opportunity to show cause why the plaintiff should not have execution.

> The writ of scire facias serves the dual purposes of a summons and a complaint, and a writ of scire facias is personal process, but the detailed requirements of a pleading are not applied to the writ of scire facias.

18 Standard Pennsylvania Practice 2d § 102:10 (1983) (footnotes omitted). Where the writ applies to a judicial record it does not serve to institute an action but is founded on an action and is termed a judicial writ. *Id.* § 102:11.

*Shapiro v. Ctr. Twp., Butler Cty.*, 632 A.2d 994, 997 n.3 (Pa. Cmwlth. 1993). "The rules of civil procedure only apply to actions brought by a praecipe for a writ of summons or a complaint." *Knopsnider v. Derry Twp. Bd. of Sup'rs*, 725 A.2d 245, 247 (Pa. Cmwlth. 1999). Writs of scire facias technically fall within neither of these categories, but are instead entirely creatures of statute. *Shapiro*, 632 A.2d at 997. Therefore, there is no requirement that post-trial motions be filed in matters involving these writs.[6]

---

[6] In *Shapiro*, we held that the Rules of Civil Procedure do not apply to hearings stemming from writs of scire facias, as such proceedings are effectively statutory appeals. 632 A.2d at 997-99. However, this reasoning is not directly applicable to matters involving redemption. Though redemption is a statutory avenue of relief that fits under the broader umbrella of scire facias, a property owner *does not*, via redemption, contest the validity or accuracy of the amount they owe to the municipality. Rather, the owner merely seeks to avail themselves of the measure of grace afforded to them by statute so as to regain or retain ownership of their home. *See* 53 P.S. § 7293.

Turning to the merits of this appeal,[7] we note that "[t]he purpose of sheriff's sales under the [Act] . . . is not to strip the owner of his or her property but to collect municipal claims." *City of Philadelphia v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013). In keeping with this broader goal, the redemption statute serves "the dual purposes of affording owners of residentially occupied properties sufficient time to raise funds to reclaim their property, and returning truly vacant and abandoned properties to the tax rolls." *City of Philadelphia v. Phan*, 148 A.3d 962, 970 (Pa. Cmwlth. 2016); *see also City of Philadelphia v. F.A. Realty Inv'rs Corp*., 95 A.3d 377, 384 (Pa. Cmwlth. 2014) (The "redemption statute is to be liberally construed so as to effect its object and to promote justice.").

Here, the Trial Court considered the totality of the circumstances and determined that the Property was vacant for purposes of the Act,[8] primarily because Weidner made no effort to reside at the Property after his release from jail, was delinquent on multiple utility bills, had allowed the Property's water service to be shut off, and had not attempted at any point prior to the sheriff's sale to remedy his

---

[7] "Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision [unsupported by substantial] evidence[,] or clearly erred as a matter of law." *City of Allentown v. Kauth*, 874 A.2d 164, 165 n.4 (Pa. Cmwlth. 2005).

[8] Per Section 32(b) of the Act, "[a]ny person entitled to redeem may present his petition to the proper court, setting forth the facts, and his readiness to pay the redemption money; whereupon the court shall grant a rule to show cause why the purchaser should not reconvey to him the premises sold; and if, upon hearing, the court shall be satisfied of the facts, it shall make the rule absolute, and upon payment being made or tendered, shall enforce it by attachment." 53 P.S. § 7293(b). Thus, once a petitioner articulates a *prima facie* valid redemption claim, the burden shifts to opposing parties to establish, by a preponderance of the evidence, why the petitioner is not entitled to such relief. *Cf. Suber v. Pa. Comm'n on Crime & Delinquency*, 885 A.2d 678, 681 (Pa. Cmwlth. 2005) (some internal punctuation omitted) ("In civil actions, the preponderance of the evidence standard generally is used except in certain situations that require clear and convincing evidence, which is reserved for cases where particularly important individual interests or rights are at stake[.]").

failure to pay school taxes. *See* N.T., 9/17/18, at 42-49. Therefore, we hold that the Trial Court did not abuse its discretion or commit an error of law by denying Weidner's Petition for Redemption. The Trial Court's determination that the property was "vacant" was supported by substantial evidence and comported with the legislative intent animating the redemption statute. For these reasons, we affirm the Trial Court's September 19, 2018, order.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Rochester Area School District | : |
| | : |
| v. | : |
| | : |
| Derek R. Weidner | : No. 1412 C.D. 2018 |
| | : |
| v. | : |
| | : |
| Kapaco Investment Group, LLC | : |
| | : |
| Appeal of: Derek R. Weidner | : |

## **O R D E R**

AND NOW, this 11ᵗʰ day of July, 2019, the Court of Common Pleas of Beaver County's September 19, 2018, order denying Appellant Derek R. Weidner's Petition for Redemption is AFFIRMED.

_____
ELLEN CEISLER, Judge